At the September Term, 1833, John Walker put in his answer, wherein he admitted that the plaintiff was the only surviving child and residuary legatee of Samuel L. Wiggins; that the said Samuel did give and bequeath as in the bill charged; that he and Thomas Walker alone qualified as executors to the will of said Samuel; that the widow of his testator (96) intermarried with S. B. Carraway, as stated in the bill, and that subsequently the defendant resigned the appointment of testamentary guardian to the plaintiff, and the said S. B. Carraway was appointed guardian in his stead. The defendant further declared that for some time after his testator's death he had the principal and almost exclusive management of his testator's estate, and to his answer annexed an account of his administration thereof, and averred the said account to be correct with the exception that therein he had taken a credit for a commission on the sum of $2,616.24, a payment made by his co-executor Thomas in discharge of a balance due from the testator Samuel to Lawrence Wiggins, unto the defendant, the guardian of the said Lawrence. The defendant denied the charges of the negligence and mismanagement contained in the bill; admitted that in September, 1821, he executed a deed of trust of his property to secure a debt due personally to Thomas Walker, and also a debt due to the Edenton Bank; but protested that the property fell short of discharging these debts. The account annexed was a copy of an account settled by him as executor of S. L. Wiggins with auditors appointed by the county court on 23 August, 1827, and exhibited a balance due from the defendant personally to the estate of his testator of $148.45.
At the same term the defendants, Mainland and Jordan Walker, filed their separate answer, and therein made the same admissions as were made by John Walker; and further admitted that Thomas Walker had died and they had proved his will as his executors. The defendants stated in their said answer that they personally knew nothing of the administration of Samuel *Page 74 
L. Wiggins's estate, but had understood and believed that their testator interfered very little therewith; that nearly all the property was received and the debts paid and the business transacted by John Walker, to whose separate answer they referred; that the only information which they possessed of the particular business of the estate transacted by their testator Thomas was derived from an account which they annexed to their (97) answer, purporting to be an account settled on 10 August, 1827, between the said Thomas and auditors of the county court, and exhibiting a balance then due him from the estate of $2, 041.88; that they had understood and believed that in order to satisfy this balance in part the said Thomas sold certain negroes of the estate on 11 February, 1828, for the sum of $1,768. 25, and that the residue of said balance never had been satisfied. They further answered that on 8 September, 1821, John Walker executed a deed of trust to Mason L. Wiggins to secure a debt due by note to the said Thomas of $2,442.10, and also a debt of $1,849.30 due the bank at Edenton; that sales of the property were made by the trustee; that they fell short of satisfying the trust debts, and that there remained, $1,000 unpaid of the said note of the said John to the said Thomas. To these answers the plaintiff replied generally, and an order was made without prejudice whereby it was referred to the master to take an account of the estate of Samuel L. Wiggins that went jointly into the hands of Thomas Walker and John Walker, and also of what went into the hands of each of them respectively, and also of their joint and respective disbursements, with leave to take testimony and to report what was done by them to the plaintiff. Before the execution of this order was completed it was ordered at the instance of the defendants, Maitland and Jordan Walker, that they have leave to take the deposition of John Walker subject to such exceptions as might be made at the hearing, and the execution of the order of reference was yet unfinished when the said John died; and the plaintiff Sarah intermarried with John G. Williams, who took out letters of administration de bonis non, with the will annexed, on the estate of Samuel L. Wiggins, and at the Fall Term, 1836, became party plaintiff to the proceedings by a bill of revivor, and caused the same to be revived accordingly. At the Spring Term, 1839, the master made his report, which was very full and elaborate, and found in substance that except in a very few instances John Walker and Thomas Walker acted severally in the management of the estate of their testator; it (98) exhibited an account of the said Thomas with the said *Page 75 
estate upon which a balance was stated in favor of the said Thomas for the sum of $277.32; and because of the abatement of the suit against John Walker it stated that the master had forborne from proceeding to state his account with the estate. To this report the plaintiff filed a great number of exceptions, and then the cause was, by consent, removed to the Supreme Court for hearing. The exceptions, together with the facts upon which they were founded, will be found stated in the opinion of the Court.
Upon the argument it was admitted by the counsel for the defendants that the fourth exception taken by the plaintiff was well founded. That exception is, for that the master has erroneously debited the estate of Samuel L. Wiggins in account with Thomas Walker, as executor, with the sum of $12 and the interest thereon; which sum was paid for a survey of land made after the death of his testator. Without, therefore, inquiring into the matter of the exception, and because of this admission, the Court doth sustain the said exception.
At the same time the counsel for the plaintiff waived the third, twelfth, eighteenth and twentieth exceptions. These, therefore, are regarded as withdrawn, and the Court hath in no way passed upon them.
With respect to the matters embraced within the remaining exceptions, the Court hath minutely inspected the testimony which has been referred to as bearing upon them and deliberately considered it. Upon each of these exceptions it has not been enabled to come to a conclusion with the same confidence, but it has not found any one sustained to its satisfaction. All these exceptions, therefore, are overruled.
Our views upon them will be briefly stated.
The first exception is, for that the master hath erroneously debited the estate of Samuel L. Wiggins with the sum of £ 2 2s. 3d., paid in discharge of an account of Horace Ely. The proof of payment of this account by the executor, Thomas Walker, is full and uncontested, but the objection that (99) the estate ought not to be charged therewith is for that the account itself was not a just one. In support of this objection to the plaintiffs rely on a due bill given by Wiggins to Ely, dated 28 March, 1816, for £ 3 6s. 1d., professing to be for a *Page 76 
balance found due upon a settlement of accounts between them up to 1 January, 1816, and upon the fact appearing on the face of this disputed account that all the items therein charged, with the exception of the last item for the laying of three grubbing hoes, £ 1 10s., on 3 January, 1816, are antecedent to the date of the said settlement. The settled account on which the note or due bill was given does not appear, so that we cannot certainly know the items of which it was composed. It does appear, however, that the deceased, Mr. Wiggins, dealt extensively with Mr. Ely as his merchant, and the disputed account is exclusively for blacksmith's work
done at the shop of the latter. Although this circumstance alone would not repel the conclusion that this account, except as to the last item, was comprehended in the settlement upon which the due bill was given, yet it comes in aid of the testimony of Mr. Ely before the master that it was notembraced in that settlement and was wholly due from Wiggins at his death. We cannot say, therefore, that Thomas Walker committed a devastavit in paying it.
The second exception is, for that the master hath debited the estate with sundry payments made by Thomas Walker, on account of a judgment of David Clark against the executors of S. L. Wiggins, amounting to the sum of $362.06. The facts in relation to the subject-matter of this exception are few and not disputed.
On 1 May, 1815, the late S. L. Wiggins became indebted on a bond for the sum of $88.20, payable to David Clark on 1 January thereafter, which bond he executed jointly with Charles Blount at the request and as the surety of the said Blount. On this bond, in November, 1822, an action was brought by the obligee, and after many delays judgment was obtained. This judgment, Charles Blount having become absolutely (100) insolvent, was paid off by Thomas Walker, as executor of Wiggins. The objection of the plaintiffs is for that it was the duty of the executors under our act of 1789, 1 Rev. Stat., ch. 46, sec. 16, and ch. 65, sec. 12, to advertise for creditors to prefer their claims: those within the State before the expiration of two years, and those without the State within three years after the qualifications of the executors; and when sued after the expiration of such time by a creditor, to plead the advertisement and lapse of time in bar of his recovery.
We are very certain that the doctrine as thus laid down has never yet received the sanction of the courts of justice in this State. In a large number, perhaps a majority of cases of executors and administrators, advertisement is not so made as to *Page 77 
enable them to set up a bar of the act of 1789, and we are yet to learn that it has ever been held that the payment of a just debt, which might have been evaded had the advertisement been made in due form and the executor or administrator had chosen to plead the statute against it, was adjudged a devastavit. Certainly executors and administrators ought, in prudence, to comply with the requisitions of the act in question, and if, by failing so to do, they subject the estate to the payment of what it doesnot owe, they and not the estate should bear the loss. But the legatees or next of kin cannot, in conscience, object to a payment, whether voluntary or compulsory, made by the representative of the estate, of what was justly due therefrom. In equity, as respects legatees or next of kin, the estate consists only of what remains after satisfaction of the creditors. That an executor is not bound to plead a statute of limitations against the claim of an honesty creditor, we have been accustomed to regard as the undisputed law of our State, handed down to us from its first settlement. The counsel for the plaintiffs supposes that a mistaken notion has prevailed on this subject, and in support of that supposition refers us to some incidental remarks made byMr. Justice Bayley in the case of McCullock v. Dawes, reported 9 Dow. and Ry., 40 (22 Eng. C. L., 386). These remarks must be understood with reference to the circumstances of the case then under consideration, a claim by open account (101) against the estate of a deceased man, more than twentyyears old; and which, without clear evidence to the contrary, must be presumed to have been paid. An executor who did not resist such a claim would justly render himself liable over to those who were interested in the testator's property. The payment of such a claim would properly subject him to the charge of unfaithfulness to his cestui que trust. In Williams's Treatise on the Law of Executors and Administrators, among the latest and best upon the subject, it is laid down that an executor is not bound to plead the statute of limitations to an action commenced against him by a creditor of the testator, nor will equity compel him, to plead it upon a bill by the residuary legatee; and the most authoritative references are given in support of these positions. See. 2 Williams on Exrs., 1110. And in Shewen v. Vanderhorst, 1 Russ. and Myl., 347 (4 Eng. Con., ch. 458), where the late Master of the Rolls and the late Lord Chancellor held that after a decree was pronounced against the executor by which the estate was taken out of his possession and vested in the court for the purpose of distribution, and the accounts ordered to be taken and the assets administered in the master's office, the *Page 78 
common law power of the executor to waive the bar of the statute was gone, and any persons parties to the suit might set it up, it is most unequivocally recognized that until such a decree rendered the executor, has an honest discretion to plead or not to plead the statute.
There might, perhaps — we do not know, however, if it be so — there might, perhaps, be some objections to the sums paid because of costs unnecessarily incurred. The exception, however, is placed solely
on the principle that it was the duty of the executors to protect the estate from the payment of the debt, because they might have barred a recovery of it under the act of 1789, and this principle we do not admit.
The fifth, sixth and twenty-first exceptions relate to one and the same subject, and may properly be considered together. The material facts, as found by the report, may be briefly stated as follows: On 4 December, 1817, Samuel L. Wiggins, at (102) the request of Abraham Howett, personally became a surety or endorser on a note purporting to be made by Abraham Howett Co., payable eighty-eight days after date at the Edenton branch of the State Bank, to John B. Blount, cashier thereof; which note was shortly after discounted at the said bank at the instance of the said Abraham Howett, and the proceeds thereof received by the said Abraham. Before the day of payment arrived Abraham Howett became insolvent and left the county, and a few weeks after the day of payment Samuel L. Wiggins died. It was not known who besides Abraham Howett composed the firm of Abraham Howett Co., but it was suspected by the executors of Wiggins that a certain William L. Chesson was a member thereof; and in the hope of being able to establish this fact and to save the estate of their testator they caused a suit to be brought by the bank in the name of Blount, the cashier, against said Chesson, as one of the makers of the said note. Upon the trial they were unable to show Chesson a member of the firm, and therefore the plaintiff was nonsuited. Howett being insolvent and run away, and being unable to fix the liability of the note upon any other person, Thomas Walker paid the amount of the note and interest, and the master has credited the said Thomas and debited the estate in account with the amount of the payment thus made. The plaintiffs object to this finding of the master upon many grounds. In the first place, they insist that there is no evidence that such a note ever was given, because the best testimony, the note itself, is not exhibited. The defendants, Mainland and Jordan Walker, have both made affidavit before the master that they have been *Page 79 
unable to find the original note, after making diligent search therefor; know not where it is to be obtained, and believe, that it is lost. According to the matter by them alleged the original, if in existence, ought to be among the papers of their testators unless it was left in the bank after payment as a canceled note. The agent of the bank entitled to the custody of such papers has sworn that he has it not, and that many papers of the bank, and amongst them canceled notes, have been destroyed by fire. The way is thus fully opened for secondary evidence; and the secondary evidence is plenary. It is then (103) objected that the payment of the note is not proved except by an ex parte affidavit of John B. Blount, which is denied to be evidence; and if payment be proved, it is not shown to have been made byThomas Walker. But this objection fails. John B. Blount died before the filing of this bill. The sworn statement, if not admissible as testimony, is admissible as his receipt; but the actual payment of the money and its payment by Thomas Walker is proved in Thomas Cox's deposition. The main objection then remains, which is, that when the note in question was executed William L. Chesson and Abraham Howett constituted the firm of Abraham Howett Co.; that the said William was solvent, and it was the duty of the executors or Wiggins, and especially of Thomas Walker, who paid the note, to compel restitution of the money from Chesson. The only evidence offered by the plaintiffs in support of the allegation that Chesson was a partner of the firm is that of William L. Chesson himself. He states that he and Abraham Howett constituted the firm of Abraham Howett 
Co. from about 25 November, 1817, until the latter part of January or first of February, 1818, when the partnership was dissolved; and further states his belief that he was able to pay and might have been compelled to pay a debt of $1,500 to $2,000 at any time since 1819. The witness does not state that the fact of his being a member of this short copartnership was notorious, nor, indeed, intimate that it was known to any but the persons constituting the firm. He does not insinuate that the action brought against him upon the note, and which he states was brought as he believed for the benefit of Wiggins's estate, was not prosecuted in good faith. Though he was examined twice in relation to the suit, and it is impossible to reconcile the two statements completely to each other — a discrepancy which we are disposed to attribute to his indistinct recollection of the circumstances attending a transaction that had occurred sixteen years before — it is apparent from these statements that he did not on the trial admit the fact that *Page 80 
he was one of the firm of A. Howett Co. He says that in order to prove that fact they introduced Mr. Wills, the (104) printer of a newspaper in Edenton, with his file of the paper containing notice of the co-partnership; but Wills could show no authority from the witness for making the publication. We must infer, therefore, that the fact was denied by him on the trial, and that it was not proved against him.
But, besides this, we have the testimony of John S. Smallwood who, in December, 1817, sold the witness Chesson a large stock of goods. He informs us that in about a month thereafter Chesson offered to the witness, in payment of the goods, three notes of Abraham Howett Co., amounting to $3,600; and on witness demanding to know who composed this firm was told by Chesson that it consisted of Abraham Howett and Sylvanus Howett, and in a few days afterwards he received the same information from Abraham Howett. The witness refusing to receive these notes Chesson then offered him the notes of Abraham Howett Co., payable to Chesson, and by him endorsed, which witness did receive. It is further testified by this witness that Chesson lived in his employment as a clerk for four or five months in the summer of 1818, and the witness never heard from the said Chesson that he was of the firm of Abraham Howett Co., nor did witness know it or know of any one who did. If it be admitted, therefore, that Mr. Chesson was in truth one of the firm liable on this note as principals, it is indisputable, we think, that the knowledge of the fact was industriously concealedso that no imputation of negligence can rest upon Thomas Walker for being unable to prove it; and unless he had good reason to believe the fact could be established by proof there was no obligation on him to run the estate of his testator to costs by bringing an action against Chesson. This is our conclusion if the solvency of Chesson was unquestionable. But upon this point we have no doubt that whatever may have been his actual ability to pay a demand of this amount, to the world the prosecution of such a demand appeared a hopeless chance
until after his intermarriage with Miss Bozman, which did not take place until between 1824 and 1826. Under all the circumstance it would be plainly iniquitous to make Thomas (105) Walker's estate lose the money so paid by him in discharge of a debt of his testator.
The 7th, 8th, 9th, 10th, 13th, 14th and 19th exceptions all relate to one and the same subject, viz., whether the estate of Thomas Walker be not chargeable because of receipts found by the master to have come exclusively into the hands of John *Page 81 
Walker, his co-executor. It appears that both John and Thomas qualified as executor of their testator at the May Term, 1818, of Washington County Court; that at the August Term following, John Walker, in person, returned an inventory, not subscribed by anyone, but purporting to be an inventory taken by Thomas and John on 25 July, 1818; that afterwards, at February Term, 1819, he returned an account of sales, signed by the said John only, and purporting to be an account of sales of the perishable part of the property belonging to the estate of Samuel L. Wiggins on 12 November, 1818; and at the same term a further account of sales, subscribed by both John and Thomas, of sales made on 14 January, 1819; and at the same term a list of notes and bonds belonging to the estate of the deceased, subscribed by both the said executors. And it is insisted by the plaintiffs that these documents establish that these articles of property and choses in action came into the hands of both the said Thomas and John, and that the estates of both of them are, and each of them is, chargeable therefor in account with the residuary legatee and administrator de bonis non of their testator. We have not found it necessary to declare what liability would prima facie
attach to the estate of Thomas Walker by reason of the documents thus relied on by the plaintiffs, because the proof is satisfactory that all the proceeds of the property in question (except as to the sums which have been charged by the master to the debit of Thomas Walker, and as to which his executors have not excepted) did come directly and exclusively into the hands of John, without the agency or concurrence of Thomas. If it had been shown that a part of the effects inventoried had been wasted, and a part of the debts which by due diligence might have been collected, had been lost to the estate, the inquiry as to the extent of each executor's liability would have presented itself under a different aspect. But when the (106) debts are actually collected by one executor only, and the product of the sales of the estate, whether the sales were made
by one or both of the executors, is received by the same executor, and there is no waste, unless it be from the misapplication by that executor, of the funds thus rightfully in his hands, it seems to be the ordinary case in which it is well settled that a devastavit by one of two executors shall not charge his companion, who has not actively contributed thereto. One has as much authority to receive the assets as the other, and there is no obligation on either to prevent his companion from getting them into possession, under the penalty of becoming responsible for his misuse thereof. Ochiltree v. Wright, 21 N.C. 337. The fact that these *Page 82 
assets did thus come exclusively into the possession of John is positively testified by him, and there is a mass of evidence tending to corroborate his testimony. But it is denied that in this case and for this purpose he is a competent witness. As a suit in equity frequently joins persons together as defendants who have several interests, it is a matter of course, before a decree made, for one defendant, upon a proper allegation for that purpose, to obtain an order for the examination of his co-defendant as to certain matters in which the latter is not interested, saving to the plaintiff all just exceptions. This order will not be discharged, upon a suggestion that from the answer of the defendant to be examined, he appears to have an interest, but the objection must be reserved until the deposition is offered in evidence. It will then be a good exception that the witness examined has an interest in the matters examined into; and if this appear, his deposition cannot be read. But it is not a good objection that he has an interest in any other matters embraced in the cause, unless it can be seen that these matters will be affected by his examination. Murray v. Shadwell, 2 Ves. Bea., 404. Now the interest which forms the subject of exception to a witness always means an interest adverse to the exceptant. It would be a singular objection to the reception of testimony that he who testifies has an interest which may bias him in (107) favor of the objector. The witness himself may demur to an examination against his interest; but this is an objection purely personal. See Nightingale v. Dodd, Ambler, 583. After a decree, it is not a motion, of course, for one defendant to examine another, and a special ground must be laid for it. Lord Eldon, however, thought that, after a decree against three trustees to account, who were all answerable prima facie, it was a clear special ground for obtaining such an order that the two sought to be examined had alone received the money. Franklyn v. Colquhoon, 16 Ves., 218. So that, in our judgment, there is no ground for the objection by the plaintiff to this defendant's testimony. In addition to what has been already remarked, there is a sufficient reason for overruling the 19th exception, for that the same is immaterial and, whether sustained or disallowed, leads to no practical results.
The 11th exception is for that the master erred in not crediting the estate of Samuel L. Wiggins, in account with Thomas Walker, as executor, with the value of five shares of steamboat stock in 1819, and the interest thereon. The facts in relations to the subject-matter of this exception are truly stated in the master's report, and it is upon these facts the plaintiffs found their *Page 83 
exception. Shortly before the death of Mr. Wiggins, a company had been formed for running a steamboat between Edenton and Plymouth, and Mr. Wiggins subscribed for five shares of stock. therein, each share $100. On 30 November, 1818, about which time the boat commenced running, John Walker, who, until his insolvency, was the principal manager of the estate, paid $450 because of his testator's subscription, and in October, 1819, paid the residue of the subscription, $50, with $2 interest thereon, and received in the name of the executors of S. L. Wiggins, a certificate for five shares of stock. No dividends were ever declared on the stock, and the capital of the company, after running the boat some years, was wholly sunk. On 13 April, 1820, John Walker set up the shares for sale at auction, but failing to get a bid which he thought himself, warranted in receiving, no sale was made. One sale of five shares of stock is proved to have been made, in 1821, by a proprietor, at the price of $26 the share, and no others are shown to have been made, (108) nor is the market price thereof otherwise proved. It is were clear, upon these facts, that John Walker was liable because of the failure to sell this stock before its worthlessness had been ascertained, there might be a question how far such liability could be raised against Thomas, who does not seem to have taken charge at all of this portion of his testator's property; but it ought to be a plain case of neglect of duty which holds an executor responsible for a loss by holding on to property of this description, bona fide, and in the exercise of his best judgment. We ought not to demand from trustees more than perfect honesty and reasonable diligence. It would be against conscience to require of the executors of Mr. Wiggins an indemnity against his estate sharing in the fate which befell all, or nearly all, who adventured with the testator in this steamboat speculation.
The facts in relation to the subject-matter of the 15th exception are not very fully stated. The exception is for that the master ought to have credited the estate of Samuel L. Wiggins and debited that of Thomas Walker with the sum of $863, the difference between the value of certain negroes in 1818 and in 1821, when they were sold. All the facts disclosed in the case are that the testator, who died in April, 1818, had been the guardian of Lawrence B. Wiggins; that at the Spring Term, 1821, a decree was obtained in the court of equity for the county of Washington, and a bill filed in the name of the said Lawrence by his then guardian, John Walker, against the said Thomas, as the executor of Samuel L. Wiggins, and that the negroes were sold immediately thereafter to pay that decree. It *Page 84 
is not denied but that the amount decreed was justly due, nor that the sale was necessary, nor that it was fairly conducted and for a full price. But it is said that, had the executors used due diligence, they might have ascertained, soon after their testator's death, that he was indebted to the estate of his ward, and that a sale of some of the negroes would be necessary to pay off this debt; that in 1819 there was a very sudden fall in the price of slaves; that in consequence of this fall the slaves sold for $863, less than they would have brought in 1818 or (109) beginning of 1819, and that this loss should fall on the executors. Waiving the inquiry whether, if the case of the plaintiffs were fully supported, he could claim an indemnity against this unforeseen and indirect calamity, we hold that, no fraud being alleged or pretended, plaintiffs must make out a plain case of breach ofduty. The plaintiffs have not shown to us that the existence of this debt and the necessity of the sale were known before the matter of the claim was put in the train of judicial investigation, or that there was any delay in getting a decision upon the claim.
The 16th exception, which objects to any allowance being made of commissions to Thomas Walker on his receipts and disbursements, is disallowed, because, in the judgment of the court, nothing is shown in the conduct of said Thomas to destroy his claim to a reasonable commission.
The plaintiffs cannot be permitted to insist upon their 17th exception, because the credit objected to was distinctly admitted before the master.
The master's report is, therefore, in all things, except as to the matter of the 4th exception, confirmed by the Court.
The account, being modified in consequence of the allowance of that exception for $12 and $12.78 interest, exhibits a balance then due to the defendants of $252.34.
It is admitted that there is no specific property belonging to the plaintiffs which has not been delivered. It follows, then, that the bill of the plaintiffs must be dismissed, and, as we think, with costs to the executors of Thomas Walker.
PER CURIAM. Bill dismissed.
Cited: Leigh v. Smith, 38 N.C. 448, 449; Jones v. Blanton, 41 N.C. 120;Barnawell v. Smith, 58 N.C. 172; Oates v. Lilly, 84 N.C. 645;Mendenhall v. Benbow, ib., 648; Halliburton v. Carson, 100 N.C. 107, 109;Pate v. Oliver, 104 N.C. 466. *Page 87